UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JASON NIEMAN, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> VERSUSLAW, INC., JOSEPH W. ) <br> ACTON, YAHOO, INC., GOOGLE INC., ) <br> and MICROSOFT, INC., ) <br> ) <br> Defendants. ) | Case No. 12-3104 |

# REPORT AND RECOMMENDATION

In April 2012, Defendants filed a Notice of Removal (#1), bringing this case to this Court from the Circuit Court of Sangamon County. Plaintiff Jason Nieman, acting pro se, brings suit against the following defendants: Microsoft Corp., Versuslaw, Inc., Joseph W. Acton, Yahoo! Inc., and Google, Inc. Plaintiff brings suit for an alleged violation of his civil rights pursuant to § 1981, in addition to other federal and state law claims. The operative complaint in this litigation is Plaintiff's Second Amended Complaint at Law (#1-5).

The Court now has pending before it several motions to dismiss. In this Report and Recommendation, the Court addresses the following motions: Defendant Google Inc.'s 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint (#16), Defendants' Microsoft Corporation and Yahoo!, Inc.'s Rule 12(b)(6) Motion to Dismiss Counts III, VI, VII, VIII, IX and X of the Second Amended Complaint (#18), Defendants Microsoft Corporation's and Yahoo!, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings on Counts III, IV, VIII, IX and X of the Second Amended Complaint (#22), and Defendants Versuslaw, Inc.'s and Joseph W. Acton's Motion to Dismiss Plaintiff's Second Amended Complaint at Law (#27).[1] Plaintiff has

---

[1] With respect to (#22), Defendants moved to amend this motion, in Microsoft Corporation's and Yahoo!, Inc.'s Motion to Correct Their Motion for Judgment on the Pleadings to Add Count VI. (#35).

responded to each of these motions.² After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that all of these motions **(#16, 18, 22, and 27)** be **GRANTED**, and that Plaintiff's complaint be dismissed in its entirety with respect to all Defendants.

## I. Background

The following background is taken from Plaintiff's Second Amended Complaint at Law (#1-5). Plaintiff is an insurance claims industry professional. From November 2009 through March 2011, Plaintiff pursued litigation against his former employer, Nationwide Mutual Insurance Company (hereinafter "Nationwide"), and several related defendants. In approximately January 2009, Plaintiff discovered that certain Internet websites were linking copies of information related to the litigation to his name, such that an internet browser search for his name would provide results that referenced the filings or rulings in his litigation against Nationwide. Plaintiff alleges that these references were occurring by way of paid legal search websites such as Lexis/Nexis.com, Justia.com, Leagle.com, and Versuslaw.com. Plaintiff alleges these entities "secure the case information and related documents by way of sites such as PACER and then 'mirror' it on to the internet by way of their sites and servers." (#1-5, p. 10, ¶ 15).

From January 2009 to present, Plaintiff has applied to various positions of employment. Plaintiff alleges that these potential employers have completed internet browser searches of his name using search engines operated by Defendants, such as Google.com, Yahoo.com, and Bing.com. Plaintiff alleges that prospective employers have found documents related to his litigation against Nationwide through conducting these searches, and have consequently disqualified him from candidacy for the positions to which he has applied. In summary, Plaintiff alleges that "Plaintiff has been effectively 'blacklisted' as to employment opportunities due to

---

²Plaintiff's responses to the various motions are in the record as follows: Plaintiff responds to (#16) in (#26), Plaintiff responds to (#18 and #22) in (#31), and Plaintiff responds to (#27) in (#33).

the ease at which these references appear pursuant to a simple name search, and due to the unlawful acts of third parties who then use such information to unlawfully disqualify the Plaintiff's candidacy." (#1-5, p. 10).

## II. Standard

Defendants' motions to dismiss seek dismissal under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Dismissal is appropriate only if Plaintiff cannot demonstrate that he is plausibly entitled to relief under the facts he has alleged. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must give fair notice of what the claim is and the grounds upon which it rests. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). However, fair notice is not enough by itself; the allegations must show that it is plausible, rather than merely speculative, that the plaintiff is entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

When considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Court must treat all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (requiring plausible grounds for inferences if those inferences are to sustain a complaint). In considering the plaintiff's factual allegations, the Court should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). District courts, however, are required to liberally construe complaints filed by pro se litigants. *Marshall v. Knight*, 445 F.3d 965 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### III. Discussion

Plaintiff brings the following claims against all Defendants: claims under the Illinois Human Rights Act, commercial misappropriation, violation of § 1981 of the Civil Rights Act, violation of the Lanham Act, intentional interference with current and prospective economic advantage, unjust enrichment / civil conspiracy, and violations of the RICO Act. All of the Defendants argue that Plaintiff's claims are barred by Section 230 of the Communications Decency Act (hereinafter "the CDA"). Additionally, all the Defendants argue that, even apart from the question of immunity presented by the CDA, Plaintiff has failed to state a claim for which relief can be granted.

The Court will begin by addressing a basic point: reproducing information obtained from judicial records maintained in connection with a public court proceeding cannot give rise to liability. Second, the Court will address the issue of Defendants' immunity under the CDA and whether Plaintiff otherwise fails to state a claim.

### A. Privilege to Publish Matters Contained in the Public Record

As the Court has already noted, Plaintiff's complaint is based on the harm caused to him as a result of documents related to his litigation against Nationwide being readily accessible on the internet. The Court notes that Plaintiff's previous litigation against Nationwide is a matter of public record. The First Amendment creates a privilege to publish matters contained in the public record, even in cases where publication would offend the sensibilities of a reasonable person. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1231-32 (7th Cir. 1993). The Seventh Circuit has further noted that "the First Amendment greatly circumscribes the right of even a private figure to obtain damages for the publication of newsworthy facts about him, even when they are facts of a kind that people want very much to conceal." *Id*. at 1232. This Court therefore concludes that Plaintiff has not stated a claim for which he is plausibly entitled to relief, given the First Amendment protections applicable to this case.

4

**B. Section 230 of the Communications Decency Act**

Section 230 of the CDA directs that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute provides broad immunity to internet service providers as to any cause of action that would make service providers liable for information originating with a third-party user of the service. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006). In discussing the statute, the Fourth Circuit has noted:

> Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Zeran v. AOL*, 129 F.3d 326, 331 (4th Cir. 1997). However, the Seventh Circuit has noted that the statute itself does not refer specifically to "immunity," and that this statute does not operate as a general prohibition of civil liability for web-site operators and other online content hosts. *Chi. Lawyer's Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008).

Section 230 applies whenever three elements are satisfied: (1) the defendant is a provider of an interactive computer service; (2) the plaintiff's claims seek to treat the defendant as a "publisher or speaker" of allegedly harmful or unlawful information, and (3) the information at issue was "provided by another information content provider." *See* 47 U.S.C. § 230(c)(1).

In the following analysis, the Court will consider whether Plaintiff's claims are barred by § 230 or are otherwise implausible claims. In so doing, the Court will distinguish between groups of Defendants, as Plaintiff has done in his complaint. Plaintiff indicates that Defendant Versuslaw, Inc., and its owner, Defendant Joseph W. Acton are more responsible for Plaintiff's injuries than the "search engine defendants," Defendants Google, Microsoft, and Yahoo. (#1-5, p. 3). Plaintiff alleges that paid legal search websites, such as Lexis/Nexis.com, Justia.com, and Versuslaw.com secured the documents related to his litigation against Nationwide and posted it online. At Plaintiff's request, some entities removed the references

5

that caused the litigation documents to turn up as results when querying Plaintiff's name. However, Plaintiff alleges that Defendant Versuslaw, Inc. and Defendant Acton did not comply with the request, and that "the only remaining offending links," found when Plaintiff's name is used as a query in a search engine, are attributable to these Defendants. (#1-5, p. 14, ¶ 23). Plaintiff further alleges that "Defendant Versuslaw, Inc. has paid the search Defendants (Google, Yahoo, and Microsoft) to increase and/or maintain the prominence of the links as to the Plaintiff's protected conduct in association with a simple search of his name." (#1-5, p. 11, ¶ 18). The Court is mindful of these additional factual allegations against Defendant Versuslaw, Inc. and Defendant Acton.

To begin an assessment of whether Plaintiff's claims are barred by the CDA: The CDA defines an "interactive computer service" to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). This definition clearly encompasses search engines. *See, e.g., Jurin v. Google Inc.,* 695 F.Supp.2d 1117, 1122-23 (E.D. Cal. 2010). In this case, the allegations against Defendants Google, Yahoo, and Microsoft are based solely on Plaintiff's factual allegations concerning search results obtained when querying Plaintiff's name using search engines operated by these defendants. Therefore, these defendants are "interactive computer service" providers under the statute. Additionally, a typical example of an "interactive computer service" is a website, such as Defendant Versuslaw, which operates versuslaw.com. *See Batzel v. Smith*, 333 F.3d 1018, 1030-31 (9th Cir. 2003) (noting that Section 230 immunity may apply to providers and users of interactive computer services). The Court concludes that all of defendants are internet service providers or users to whom Section 230 may apply.

Second, the Eight Circuit has succinctly summarized how the CDA operates to ensure that internet service providers are not held liable for content developed primarily by third parties:

> The CDA states that '[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider,' 47 U.S.C. § 230(c)(1), and expressly preempts any state law to the contrary, id. § 230(e)(3). The CDA defines an 'information content provider' as 'any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other interactive computer service.' *Id*. at § 230(f)(3). Read together, these provision bar plaintiffs from holding ISPs legally responsible for information that third parties created and developed [citation omitted]. 'Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them.' *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009).

*Johnson v. Arden*, 614 F.3d 785, 790-91 (8th Cir. 2010).

Stated another way, an internet service provider qualifies for immunity so long as it does not also function as an "information content provider" for the portion of the statement or publication at issue. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Section 230 provides broad immunity to internet service providers that publish content provided primarily by third parties. *Id*.

In this case, Plaintiff has specifically alleged that the offensive search results giving rise to his claim against Defendants Google, Yahoo, and Microsoft are links to copies of information related to his litigation against Nationwide. Plaintiff indicates that the links include attachments to rulings on general court matters. It is indisputable that Defendants Google, Yahoo, and Microsoft were not involved in the creation or development of these court rulings. Additionally, though Plaintiff argues Defendant Versuslaw has greater liability because it secured the documents related to his litigation against Nationwide and posted them online, this would still be considered content provided primarily by third parties. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (stating "so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process"). The Court concludes that the information at issue was "provided by another information content provider." 47 U.S.C. § 230(c)(1).

The only remaining issue is whether Plaintiff's specific claims seek to treat defendants as publishers. Plaintiff brings claims federal claims under § 1981 of the Civil Rights Act, the Lanham Act, and the RICO Act. Plaintiff also brings state law claims under the Illinois Human Rights Act, and he brings state law tort claims of commercial misappropriation, intentional interference with current and prospective economic advantage, unjust enrichment, and civil conspiracy.

The Court will first address the federal claims. To begin, the claims brought under § 1981 and RICO are, quite simply, not applicable to the facts as Plaintiff has pled. *See Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir. 1996) (setting forth elements of a § 1981 claim); *see also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992) (setting forth elements of a RICO claim). Plaintiff's civil rights claim is implausible, as Plaintiff is not a member of a racial minority. Plaintiff's RICO claim is also implausible, as Plaintiff's complaint is devoid of allegations that could support a finding of an enterprise or a pattern of racketeering activity. Next, considering Plaintiff's claim under the Lanham Act, the Seventh Circuit considered an analogous case in *Stayart v. Yahoo! Inc.*, 623 F.3d 436 (7th Cir. 2010), in which a plaintiff brought suit against Yahoo! Inc. based on search results obtained when using her name as a search query. In that case, the Seventh Circuit did not reach the issues concerning the CDA. Instead, the court held that the plaintiff lacked standing to bring suit under the Lanham Act because she lacked a commercial interest in her name. Plaintiff's case here is no different, as the Seventh Circuit's reasoning reflects that one's interest in their professional reputation does not amount to a commercial interest in their name.

Second, Defendants argue that Plaintiff's state claims are barred by the CDA. Though Plaintiff nominally brings a variety of types of claims, ranging from claims under IHRA to civil conspiracy, the Court notes that the factual essence of Plaintiff's claims is actually more akin to defamation and various privacy torts. Many circuit courts have held that the CDA bars claims under any state law theory to persons harmed by allegedly defamatory material, where the

8

defendant is not a "publisher or speaker" as defined by the act. *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010) (summarizing holdings in five other circuit courts). While the Seventh Circuit has not directly addressed the issue of the scope of the CDA with respect to state claims for defamation, the Court is persuaded by the authority from other circuits that such immunity for defendants is appropriate in this case. Furthermore, with respect to Plaintiff's claim for commercial misappropriation, such a claim is pre-empted by the Illinois Right of Publicity Act. 765 ILCS 1075/30(a). Under the statute, there can be no liability where a person's identity is used for a non-commercial purpose, including in any news or public affairs account. 765 ILCS 1075/35(b)(2). This exemption is applicable to this case, as Plaintiff's prior litigation is a matter of public interest and public record. The Court concludes that any claim Plaintiff may have for defamation is barred by the CDA, and any privacy tort he may claim against Defendants is similarly not actionable.

Additionally, several of the state claims that Plaintiff has brought are not supported by his factual allegations. Specifically, Plaintiff brings a claim under the Illinois Human Rights Act, and also brings counts for intentional interference with current and prospective economic advantage, for unjust enrichment, and for civil conspiracy. To establish a prima facie case of retaliation under IHRA, a plaintiff must show that he engaged in a protected activity, and that as a result his employer committed an adverse act against him. *Carter Coal Co. v. Human Rights Comm'n*, 261 Ill.App.3d 1, 7 (Ill. App. Ct. 1994). In this case, Defendants have no employment relationship with Plaintiff. Similarly, Plaintiff's claim for interference with prospective economic advantage must fail because the facts, as Plaintiff has alleged them, indicate Plaintiff did not have any valid business relationship or expectancy. *See Small v. Sussman*, 306 Ill.App.3d 639, 648 (Ill. App. Ct. 1999) (stating elements of tortious interference with prospective economic advantage). Plaintiff's Count IX for unjust enrichment and civil conspiracy is also factually unsupported. These specific claims are most simply addressed by noting, as this Court has already discussed above, that providing online access to judicial public records implicates First Amendment privileges, and so these activities cannot form the basis of a tort for civil conspiracy or unjust enrichment.

As such, this Court concludes that the facts, as Plaintiff has alleged them, indicate he does not have any viable claim against Defendants. Defendants enjoy a First Amendment privilege to publish matters of public record, any state law defamation or privacy claim would be barred by CDA, and the facts, as Plaintiff has alleged them, do not support his other various statutory and common law claims.

### IV. Summary

For these reasons, the Court recommends that Defendants' various motions to dismiss (**#16**, **18**, **22**, and **27**) be **GRANTED**, and that Plaintiff's complaint be dismissed in its entirety with respect to all Defendants.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986)**.**

ENTERED this 13th day of June, 2012.

                                            s/DAVID G. BERNTHAL
                                     UNITED STATES MAGISTRATE JUDGE