E-FILED
Friday, 03 August, 2012  04:13:34 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JASON LEE NIEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-3104 |
| | ) | |
| VERSUSLAW, INC., JOSEPH W. | ) | |
| ACTON, YAHOO!, INC., GOOGLE | ) | |
| INC., and MICROSOFT, CORP., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on the Report and

Recommendation (d/e 39) entered by Magistrate Judge David G.

Bernthal on June 13, 2012.  Plaintiff filed "Plaintiff's Objections to the

Magistrate's Report and Recommendation (In Favor of Dismissal of All

Causes In This Action)" (Objections) (d/e 40) on June 14, 2012.  See 28

U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

The Report and Recommendation recommends granting

Defendants' various motions to dismiss (<u>see</u> d/e 16, d/e 18, d/e 22, and d/e 27) and dismissing Plaintiff's Second Amended Complaint in its entirety with respect to all Defendants.  This Court reviews <u>de</u> <u>novo</u> any part of the Report and Recommendation that has been properly objected to.  28 U.S.C. § 636(b)(1)(C).  For the reasons set forth below, the Court overrules Plaintiff's Objections and adopts Judge Bernthal's Report and Recommendation.

## <u>BACKGROUND</u>

### A. Plaintiff's Second Amended Complaint

The operative complaint in this matter is Plaintiff's Second Amended Complaint at Law (Second Amended Complaint).  The Second Amended Complaint brings claims against the following Defendants: Microsoft Corp. (Microsoft); Versuslaw, Inc. (Versuslaw); Yahoo!, Inc. (Yahoo); Google, Inc. (Google); and Joseph W. Acton (Acton).  In the Second Amended Complaint Plaintiff brings suit for an alleged violation of 42 U.S.C. § 1981, in addition to several other federal and state law claims.  The claims arise from the following facts that Plaintiff has alleged

in his Second Amended Complaint.

Plaintiff is an insurance claims industry professional with over 20 years of experience.  Between November 2009 and March 2011, Plaintiff was involved in litigation against his former employer, Nationwide Mutual Insurance Company (Nationwide) and several related defendants.

In approximately January 2009, Plaintiff discovered that certain Internet websites were linking copies of information related to the litigation to Plaintiff's name, such that a simple Internet browser search for his name would provide immediate results that referenced one or more of the filings or rulings in the active litigation.  According to Plaintiff, rather than linking his name to significant rulings, such as appellate decisions or even trial court summary judgment rulings, the links included attachments to rulings on matters as common as a stipulated motion to quash a subpoena.  Plaintiff has alleged that these references were occurring by way of paid legal search websites such as Lexis/Nexis.com, Justia.com, Leagle.com, and Versuslaw.com (and/or its

related site, Findacase.com).  These entities secure the case information and related documents by way of sites such as PACER and then "mirror" them onto the Internet by way of their sites and servers.

Between January 2009 and the date of filing this action, Plaintiff applied for one or more positions of employment.  Plaintiff believes that the potential employers have performed Internet browser searches by way of Google.com, Yahoo.com, or Bing.com, and found documents related to litigation against his former employer Nationwide.  Plaintiff also believes that the potential employers have used this information to disqualify him from candidacy for the applied position or have shared this information with others who have done so.  In other words, Plaintiff alleges he "has been effectively 'blacklisted' as to employment opportunities due to the ease at which these references appear pursuant to a simple name search, and due to the unlawful acts of third parties who then use such information to unlawfully disqualify" his candidacy.

Plaintiff filed the Second Amended Complaint which brings the following claims against Defendants: (1) claims under the Illinois Human

Rights Act; (2) commercial misappropriation; (3) violation of § 1981 of

the Civil Rights Act (42 U.S.C. § 1981); (4) violation of the Lanham Act;

(5) intentional interference with current and prospective economic

advantage; (6) unjust enrichment /civil conspiracy; and (7) violations of

the Racketeer Influenced and Corrupt Organizations Act (RICO).

## B. Defendants' Motions

Defendants have all brought Motions to Dismiss.  See d/e 16, d/e

18, and d/e 27.  Additionally, Defendants Microsoft and Yahoo have

brought a Motion for Judgment on the Pleadings on Counts III, IV, VIII,

IX, and X of the Second Amended Complaint.[1]  See d/e 22.  All of the

Defendants argue that Plaintiff's claims are barred by Section 230 of the

Communications Decency Act (CDA).  All  Defendants also argue that,

even apart from the question of whether the CDA bars Plaintiff's claims,

Plaintiff has failed to state a claim for which relief can be granted.

---

[1] On June 13, 2008, the same day Judge Bernthal issued the Report and
Recommendation, Microsoft and Yahoo filed a Corrected Motion for Judgment on
the Pleadings (d/e 38) which included Count VI, which had been left out of the
original Motion for Judgment on the Pleadings.

### C. Judge Bernthal's Report and Recommendation and Plaintiff's Objections Thereto

As stated, Judge Bernthal has recommended that Defendants' Motions d/e 16,18, 22, and 27 be granted for several reasons.  First, Plaintiff's litigation against Nationwide is a matter of public record and the First Amendment creates a privilege to public matters contained in the public record.  Second, Plaintiff's claims are barred by § 230 of the CDA (47 U.S.C. § 230(c)(1)).  Finally, the facts as Plaintiff has alleged them do not support Plaintiff's various statutory and common law claims.

On June 14, 2012, Plaintiff filed his Objections to the Report and Recommendation.  Plaintiff argues that: (1) the First Amendment does not protect Defendants, (2) Section 230 of the CDA does not bar Plaintiff's claims, and (3) Judge Bernthal erred in concluding that Plaintiff failed to state any federal or state claims.

## ANALYSIS

Under Rule 12(b)(6), dismissal is proper where a complaint fails to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  To state a claim upon which relief can be granted, a complaint must

provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929, 940 (2007). This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests'" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir.2007). While detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555, 127 S.Ct. at 1965, 167 L.Ed.2d at 940. Conclusory allegations are "not entitled to be assumed true." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868, 885 (2009) (citing Twombly, 550 U.S. 544 (2007)). "In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded

allegations as true and draw all inferences in favor of the non-moving party." In re marchFIRST Inc., 589 F.3d 901, 904 (7th Cir. 2009) (citing Tamayo, 526 F.3d at 1081).

A motion for judgment on the pleadings is "designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." All Amer. Inc. Co. v. Broeren Russo Const., Inc., 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000) (internal quotations omitted).  Rule 12(c) permits judgment based on the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998).  The court may also "take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from the prior proceedings." Hernandez ex rel. Gonzalez v. Tapia, 2010 WL 5232942, at *3 (N.D. Ill. 2010).  "A motion for judgment on the pleadings is subject to the same standard as a

3:12-cv-03104-SEM-DGB   # 44   Page 9 of 29

Rule 12(b)(6) motion to dismiss." <u>Medeiros v. Client Services, Inc.</u>, 2010 WL 3283050, at *1 (N.D. Ill. 2010), <u>citing</u> <u>Piscotta v. Old Nat'l Bancorp</u>, 499 F.3d 629, 633 (7th Cir. 2007).

### 1. *Defendants' Motions to Dismiss Are Granted Because Plaintiff Has Not Stated a Claim*

#### a. *Counts I and III - Illinois Human Rights Act*

Counts I and III are brought against Defendants and purport to allege violations of the Illinois Human Rights Act (IHRA), specifically, 775 ILCS 5/6-101(A) and/or (B).  In these Counts, Plaintiff alleges that he has given Defendants notice that their actions, *i.e.*, "publicizing the Plaintiff's protected conduct without justification[,] acts to aid and/or abet those who would seek to retaliate or discriminate against the Plaintiff for taking part in protected employment activities, and that their continuing refusal to remove such references or links constitute retaliation as to his prior protected conduct."

Section 6-101 of the IHRA provides that it is a civil rights violation for a person, or two or more people to, conspire to "retaliate against a person because he or she has opposed that which he or she reasonably

Page 9 of  29

and in good faith believes to be unlawful discrimination." 775 ILCS 5/6-101(A)). It is also a violation of the IHRA to "[a]id, abet, compel or coerce a person to commit any violation of [the IHRA]." 775 ILCS 5/6-101(B)).

The elements of a claim for retaliation under the IHRA are that (1) the employee was engaged in a protected activity; (2) the employer committed a material adverse act against him; and (3) a causal nexus existed between the protected activity and the adverse act. Hoffelt v. Illinois Dept. Of Human Rights, 367 Ill. App. 3d 628, 634 (Ill. App. Ct. 2006). Plaintiff has not stated a claim for any violation of the IHRA where the allegations against Defendants are that they provided links to public court documents involving litigation between Plaintiff and his former employer and refused to remove the documents when requested by Plaintiff. Here, the Second Amended Complaint does not allege that any of the Defendants are an employer or potential employer of Plaintiff, nor does it allege that any of the Defendants have committed a material adverse act against Plaintiff. The allegations, which are assumed to be

true for purposes of Defendants' Motions, only establish that Defendants provided access to public information that potential employers used to deny Plaintiff employment.  This is not sufficient to state a claim under the IHRA.

### b.  *Counts II and IV - Commercial Misappropriation*

Counts II and IV are state law claims for commercial misappropriation.  These Counts allege that when Plaintiff's name is entered into one of the various Defendants' (Google, Yahoo, or Microsoft) search engines, a link appears to one of Defendant Versuslaw's websites.  When the link is "triggered", the searching party is steered to a page where the searching party can buy a copy of the document for $4.95.  The Plaintiff alleges this is "misappropriating his identity for commercial purposes."

First, the Court notes that the Right of Publicity Act, effective January 1, 1999, replaced the common-law tort of appropriation of likeness.  <u>Maremont v. Susan Fredman Design Group, Ltd.</u>, 772 F. Supp. 2d 967, 972 (N.D. Ill. 2011); <u>see</u> <u>also</u> 765 ILCS 1075/60.  Section 30 of

the Right of Publicity Act provides, "A person may not use an individual's

identity for commercial purposes during the individual's lifetime without

having obtained previous written consent . . . ."  765 ILCS 1075/30(a).

The Right of Publicity Act defines "commercial purpose" as "public use

or holding out of an individual's identity (i) on or in connection with the

offering for sale or sale of a product, merchandise, goods, or services; (ii)

for purposes of advertising or promoting products, merchandise, goods, or

services; or (iii) for the purpose of fundraising."  765 ILCS 1075/5.

Moreover, section 35 of the Right of Publicity Act states that the Act

does not apply to the use of an individual's identity for non-commercial

purposes, including any news, public affairs, or sports broadcast or

account, or any political campaign."

Here, Plaintiff has not stated a claim under the Right of Publicity

Act.  First, the exemption from liability for using a person's identity for a

non-commercial purpose, including in a news or public affairs account is

applicable here.  Plaintiff's prior litigation is a matter of public record and

public interest.  Moreover, Plaintiff's identity is not being used for a

"commercial purpose" as defined by the Right of Publicity Act because his name is used only to find documents related to his case, which are part of the public record.  His name is not being held out or used to entice anyone to buy a product.  Under Plaintiff's theory, every person who is involved in litigation who has public court documents that can be accessed for a fee on the Internet by doing a browser search or found by using Westlaw, Lexis, Versuslaw, or any other legal research site can state a claim under the Right of Publicity Act.  This cannot be the case.

### c.  Counts V and VI - 42 U.S.C. § 1981

In Counts V and VI, Plaintiff attempts to allege a claim under 42 U.S.C. § 1981.  In order to state a claim of discrimination under § 1981, Plaintiff must allege that (1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 756 (7th Cir. 2006).  Here, Plaintiff has failed to allege any of these elements.  Plaintiff's allegations have nothing to do with discrimination based on race.  Nor do the

allegations relate to the making or enforcing of a contract.  Therefore, Plaintiff has not stated a claim under § 1981.

### d.  Count VII - Lanham Act

Count VII is a claim under the Lanham Act against all Defendants. Plaintiff alleges that he has a "substantial property interest in his name" and "the commercial use of his name is only expected to grow in the future."  Plaintiff further alleges Defendants Versuslaw and Acton are attempting to associate Plaintiff with their for-profit website.  Plaintiff accuses Defendants Google, Yahoo, and Microsoft of actively participating in "these unlawful acts . . . by way of their paid search ranking and/or AdWords mechanisms."  While Plaintiff never actually states what violation of the Lanham Act he is attempting to plead, the allegations and his filings in this matter make clear he is alleging a claim under section 43(a) (15 U.S.C. § 1125(a)) of the Lanham Act.  "Section 43(a) of the Lanham Act provides two general theories of liability: (1) false representations regarding the origin, endorsement, or association of goods or services through the wrongful use of another's distinctive mark,

name, trade dress, or other device ("false endorsement" or "false association"); and (2) false representations in advertising concerning the quality of services or goods ("false advertising")."  <u>Stayart v. Yahoo! Inc.</u>, 651 F. Supp. 2d 873, 880 (E.D. Wis. 2009).  Plaintiff's claims are consistent with the first theory of liability.

As an initial matter, the Court notes that Plaintiff must establish he has standing under the Lanham Act.  <u>Stayart v. Yahoo! Inc.</u>, 623 F.3d 436, 438 (7th Cir. 2010).  Judge Bernthal, in his Report and Recommendation, concluded that Plaintiff does not have a commercial interest in his name, and therefore lacks standing.  This Court agrees with Judge Bernthal and his Report and Recommendation.

"[S]tanding to assert a § 43 claim is limited to a 'purely commercial class of plaintiffs.'"  <u>Id.</u> at 439 (quoting <u>Berni v. Int. Gourmet Rest. of Am.</u>, 838 F.2d 642, 648 (2d Cir.1988)).  Plaintiff has simply made conclusory allegations that he has a commercial interest in his professional reputation.  In <u>Stayart</u>, the Seventh Circuit Court of Appeals rejected the plaintiff's argument that she had a commercial interest in her

name because of her extensive activities, including humanitarian efforts.

Stayart, 623 F.3d at 439.  In doing so, the court stated that "the good

name that a person garners in such altruistic feats is not what § 43 of the

Lanham Act protects:  it 'is a private remedy for a commercial plaintiff

who meets the burden of proving that its commercial interests have been

harmed by a competitor.'" Id. (citation omitted).  Similarly, Plaintiff's

individual reputation in the insurance industry is not the commercial

interest the Lanham Act seeks to protect.  Therefore, Plaintiff lacks

standing to bring a claim under the Lanham Act.

e.  *Count VIII - Intentional Interference with Current and Prospective Economic Advantage*

Count VIII is a claim against all Defendants for intentional

interference with current and prospective economic advantage.  Plaintiff

attached a report to the Second Amended Complaint which indicates

that 75% of hiring managers or recruiters use the Internet as part of their

review of candidates/applicants.  According to Plaintiff, the most

common method of research is using a search engine, like Yahoo, Google,

or Microsoft's Bing.  Plaintiff again alleges he has been "blacklisted"

based upon the online availability of the documents related to his

litigation against his former employer.  Plaintiff claims that Defendants

should reasonably have been able to anticipate "these adverse

employment actions."

Under Illinois law, the elements of a claim for tortious interference

with prospective economic advantage or business relationship are: (1) the

existence of a valid business relationship or expectancy; (2) the

defendant's knowledge of plaintiff's relationship or expectancy; (3) an

intentional and unjustified interference by the defendant inducing or

causing a breach or termination of the expectancy; and (4) damages to

plaintiff resulting from such interference.  <u>Anderson v. Vanden Dorpel</u>,

172 Ill.2d 399, 406-07 (Ill. 1996).  "A plaintiff states a cause of action

only if he alleges a business expectancy with a specific third party as well

as action by the defendant directed towards that third party."  <u>Associated</u>

<u>Underwriters of America Agency, Inc. v. McCarthy</u>, 356 Ill. App. 3d

1010, 1020 (Ill. App. Ct. 2005).

Here, Plaintiff's Second Amended Complaint does not state a claim

for this tort.  First, Plaintiff has not alleged the existence of a valid

business relationship or expectancy.  See Buchanan v. Serbin Fashions,

Inc., 698 F. Supp. 731, 734 (N.D. Ill 1988) (rejecting claim that prospect

of receiving job offer constitutes a sufficient expectancy); Werblood v.

Columbia College, 180 Ill. App. 3d 967 (Ill. App. Ct. 1989) (the

plaintiff's expectation of a renewal of her current college employment

contract was not sufficient to support a cause of action for intentional

interference, even though officials of her college had assured her that her

employment there was secure).  Moreover, Plaintiff has not alleged that

Defendants had knowledge of Plaintiff's alleged business relationship or

expectancy.  Nor has he alleged an intentional and unjustified

interference by Defendants which induced or caused a breach or

termination of the business relationship or expectancy.  Finally, Plaintiff

has not met the requirement, as stated in McCarthy,  that he allege a

business expectancy with a specific third party as well as action by the

Defendants directed towards that third party.  Therefore, Plaintiff has

not stated a claim for intentional interference with current and

prospective economic advantage in Count VIII.

### f.  Count IX - Unjust Enrichment/Civil Conspiracy

In Count IX, Plaintiff alleges unjust enrichment and civil conspiracy against all Defendants.  In Count IX, Plaintiff repeats the  allegations he has set forth in his other claims.  Additionally, he alleges Defendants "have acted individually, and/or in concert, by the actions of two or more persons in conspiracy as to their actions."

"To establish an unjust enrichment claim under Illinois common law, a plaintiff must show: (1) the defendant has 'unjustly retained a benefit to the plaintiff's detriment' and (2) the defendant's 'retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" Siegel v. Shell Oil Co., 656 F. Supp. 2d 825, 834 (N.D. Ill. 2009) (citation omitted).  "For a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." Martis v. Grinnell Mut. Reinsurance Co., 388 Ill. App. 3d 1017, 1025 (Ill. App. Ct. 2009).

Plaintiff cannot state a claim because there was no independent basis that established a duty on Defendants to act.  Moreover, Plaintiff's unjust enrichment claim cannot stand on allegations that Defendants were unjustly enriched by providing electronic access to public case information.  Defendants are not "retaining a benefit" to Plaintiff's detriment just because they are selling electronic access to public information and Plaintiff does not like the information contained in those public documents.

"Under Illinois law, the 'elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." Id. at 836.  Civil conspiracy is not an independent tort, rather there must be an independent cause of action underlying a civil conspiracy claim. Id. Plaintiff's allegations fall short of establishing the last two elements of this claim.  Plaintiff's allegations do not establish that Defendants

worked together to accomplish an action that had an unlawful purpose or a lawful purpose by unlawful means in the furtherance of which one of the conspirators committed an overt tortious or unlawful act.

### g. Count X - RICO

Count X of the Second Amended Complaint purports to allege a RICO violation.  This Count fails to state a RICO claim as there are no allegations that any of the Defendants were involved in a "racketeering activity" as defined in 18 U.S.C. § 1961 or that they engaged in any of the prohibited activities enumerated in 18 U.S.C. § 1962.

## 2.  Defendants Microsoft's and Yahoo! Inc.'s Motion for Judgment on the Pleadings is Granted

Judge Bernthal recommended that Microsoft's and Yahoo! Inc.'s Motion for Judgment on the Pleadings[2] on Counts III, IV, VIII, IX, and X of the Second Amended Complaint be granted.  Judge Bernthal concluded that Plaintiff's claims are barred by the First Amendment because reproducing and selling public information obtained in the form

---

[2] A Corrected Motion for Judgment on the Pleadings that included Count VI was filed later.

of judicial opinions issued in connection with a public court proceeding cannot give rise to liability.  See Rubin v. City of Berwyn, 553 F. Supp. 476, 479 (N.D. Ill. 1982) (stating "the right to sell and disseminate public information is protected by the First Amendment").  Judge Bernthal also concluded that Plaintiff's state law claims, which Judge Bernthal found are more akin to defamation and various privacy torts, are barred by § 230 of the CDA.

### a.  The First Amendment Bars Plaintiff's Claims

All of Plaintiff's claims are based upon the following core allegations.  Plaintiff was involved in litigation against his former employer.  A search of Plaintiff's name on Defendants' websites results in links to copies of filings and court rulings in the Plaintiff's case against his former employer.  Potential employers are doing searches of Plaintiff's name and have seen this information.  Plaintiff has been "blacklisted" and has lost out on several potential job opportunities because of this.

However, "the First Amendment creates a privilege to publish matters contained in public records even if publication would offend the

sensibilities of a reasonable person." <u>Haynes v. Alred A. Knopf, Inc.</u>, 8 F.3d 1222, 1231-32 (7th Cir. 1993).  Moreover, "the First Amendment greatly circumscribes the right even of a private figure to obtain damages for the publication of newsworthy facts about him, even when they are facts of a kind that people want very much to conceal." <u>Id.</u> at 1232.  As stated, all of Plaintiff's allegations rest on the premise that Defendants' websites provide links to information that is in the public record. Plaintiff cannot show he is plausibly entitled to relief.  Therefore, judgment on the pleadings is appropriate.

> b.  *Section 230 of the Communications Decency Act*

Judge Bernthal, in his Report and Recommendation, also concludes that Plaintiff's state law claims are really variations of defamation and invasion of privacy claims that are barred by § 230 of the CDA.  In enacting the CDA, Congress sought to "promote the continued development of the Internet and other interactive computer services and other interactive media," and to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive

computer services, unfettered by Federal or State regulation."  47 U.S.C. § 230(b).

Section 230 of the CDA provides, in part, that (1) "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" and (2) "[n]o cause of action may be brought and no liability may be imposed under any State or local rule that is inconsistent with this section."  47 U.S.C. §§ 230(c)(1) & (e)(3).

The language of § 230 sets three limits on the "immunity"[3] provided.  First, the "immunity" is available only to a "provider or user of an interactive computer service."  47 U.S.C. § 230(c)(1).  The CDA defines the term "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. §

---

[3] The Seventh Circuit has noted that the statutory text of § 230(c)(1) does not mention "immunity" or any synonym, and explained "why § 230(c) as a whole cannot be understood as a prohibition of civil liability for web-site operators and other online contents."  <u>Chicago Laywers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.</u>, 519 F.3d 666, 669-70 (7th Cir. 2008) (citing <u>Doe v. GTE Corp.</u>, 347 F.3d 655, 659-60 (7th Cir. 2003)

230(f)(2).  Second, "immunity" is only available for liability based on the

defendant having acted as a "publisher or speaker."  47 U.S.C. §

230(c)(1).  Finally, "immunity" can be claimed only with respect to

"information provided by another information content provider."  47

U.S.C. § 230(c)(1).   An "information content provider" is "any person or

entity that is responsible, in whole or in part, for the creation or

development of information provided through the Internet or any other

interactive computer service."  47 U.S.C. § 230(f)(3).

The Court has reviewed the Report and Recommendation closely

and agrees with the conclusions therein that § 230 bars many of

Plaintiff's claims in the Second Amended Complaint.  However, the

Court notes that nothing in § 230 shall be construed to (1) impair the

enforcement of any Federal criminal statute or (2) limit or expand any

law pertaining to intellectual property.  47 U.S.C. § 230(e)(1) &(2).

Therefore, the Court questions whether § 230 would serve to bar

Plaintiff's Lanham Act, Right of Publicity Act, and RICO claims.

First, the Lanham Act claim would most certainly be considered an

intellectual property claim.  See Stayart, 651 F. Supp. 2d at 885 (stating

if the Plaintiff has stated a claim for false endorsement under the Lanham

Act, the defendant would not be immune from liability for those claims

because such a claim would probably be considered an intellectual

property claim).  Moreover, Plaintiff's commercial misappropriation

claims, which this Court has treated as claims under the Right of

Publicity Act, would also likely be considered intellectual property claims

and would therefore not be barred by the § 230 of the CDA.  See id. at

287-88 (stating that a right-to-publicity claim is generally considered an

intellectual property claim and recognizing the disagreement among

various federal courts regarding the scope of the intellectual property

exception in § 230(e)(2)).

Finally, it is unclear whether § 230 would bar a RICO claim.  This

Court has found no caselaw on the issue.  As stated, "[n]othing in [§

230] shall be construed to impair the enforcement of . . .  any other

Federal criminal statute."  47 U.S.C. § 230(e)(1).  RICO provides for

both civil and criminal enforcement.  See 18 U.S.C. § 1963 (setting forth

RICO's criminal penalties) and 18 U.S.C. § 1964 (setting forth RICO's civil remedies).  However, even claims brought pursuant to the civil enforcement provision of RICO may only be brought by the Attorney General or a person injured in his business or property by reason of a violation of 18 U.S.C. § 1962.  See 18 U.S.C. § 1964(b), (c).  Section 1962 sets forth the activities prohibited by RICO, all of which are "unlawful."  See 18 U.S.C. § 1962.  Also of note, the RICO statute located in Title 18 of the United States Code, which is entitled "Crimes and Criminal Procedure."  Therefore, arguably, § 230 of the CDA may not be used to bar a civil RICO claim because that would impair the enforcement of a Federal criminal statute.

However, the Court need not resolve these issues as the Court has already determined that Plaintiff has not stated a claim under any of the Counts he alleged in his Second Amended Complaint.  More importantly, the Court concluded the First Amendment bars all of Plaintiff's claims.

IT IS THEREFORE ORDERED that Plaintiff's Objections to the

Report and Recommendation are OVERRULED and Judge Bernthal's
Report and Recommendation (d/e 39) is ADOPTED.  Defendants'
Motions to Dismiss (d/e 16, d/e 18, and d/e 27) are GRANTED.
Additionally, Defendants Microsoft's and Yahoo! Inc.'s Motion for
Judgment on the Pleadings (d/e 22) is GRANTED.  Because all of
Plaintiff's claims are based on providing information that is in the public
record, Plaintiff's claims are barred by the First Amendment and any
amendment of the Second Amended Complaint would be fruitless.
Therefore, the Second Amended Complaint is DISMISSED WITH
PREJUDICE.  This ruling renders moot both (1) Plaintiff's Motion for
Preliminary Injunction against Acton and Versuslaw (d/e 10) because
there is no likelihood of success on the merits, and (2) Microsoft's and
Yahoo's Corrected Motion for Judgment on the Pleadings (d/e 38)
because Count VI has been dismissed with prejudice and the First
Amendment bars such a claim.  Therefore, Plaintiff's Motion for
Preliminary Injunction (d/e 10) and Defendants Microsoft's and Yahoo's
Corrected Motion for Judgment on the Pleadings (d/e 38) are DENIED

AS MOOT.  This case is CLOSED.

IT IS THEREFORE SO ORDERED.

ENTERED: August 2, 2012.

         FOR THE COURT:

                              _____s/ Sue E. Myerscough_____
                                      SUE E. MYERSCOUGH
                              UNITED STATE DISTRICT JUDGE